**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*   (203) 821-3700
*157 Church Street, 25th Floor*   *Fax (203) 773-5376*
*New Haven, Connecticut 06510*   *www.justice.gov/usao/ct*

December 17, 2019

J. Patten Brown, III, Esq.
43 West Main Street
Avon, Connecticut 06001

Re: United States v. ~~Joseph Gary~~ Gary Joseph Gravelle
Criminal No. 3:19CR126(KAD)

United States v. Roland Prejean, aka Gary Joseph Gravelle
Criminal No. 3:10CR206(KAD)

Dear Attorney Brown:

This letter confirms the plea agreement between your client, Joseph|Gary Gravelle (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in the referenced criminal cases.

**THE PLEAS AND OFFENSES**

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to seven counts of the 16-count Indictment charging three different violations of federal criminal law. The defendant understands that, to be guilty of each of the offenses, the following essential elements as set out must be satisfied.

<u>Counts One, Two, Five, Six, and Ten (Maliciously conveying false information about explosive)</u>

1. The defendant, through the use of mail, telephone, telegraph, or other instrument of interstate or foreign commerce;

2. Maliciously conveyed false information;

3. In and affecting interstate or foreign commerce;

4. Knowing it to be false;

5. Concerning an attempt or alleged attempt being made, or to be made -

J. Patten Brown, III, Esq.
December 17, 2019
Page 2

      a. to kill, injure, or intimidate any individual; or

      b. unlawfully to damage or destroy any building, vehicle, or other real or personal property; and

6. By means of fire or an explosive.

Count Thirteen (False information and hoax)

1. The defendant intentionally conveyed false or misleading information under circumstances in which such information may reasonably have been believed; and

2. Such information indicated that an activity had taken, was taking, or would take place that would constitute a violation of Chapter 10 of 18 U.S.C. § 175(a)(transfer and possession of a biological agent or toxin for use as a weapon).

Count Sixteen (Threats against President)

1. The defendant mailed the words alleged in the Indictment to be a threat to kill, to kidnap, or to inflict bodily harm upon the President of the United States;

2. The words were in fact a threat; and

3. The defendant made the threat knowingly and willfully.

**THE PENALTIES**

Imprisonment

    Counts One, Two, Five, Six and Ten each carries a maximum penalty of 10 years of imprisonment. Counts Thirteen and Sixteen each carries a maximum penalty of 5 years of imprisonment.

Supervised Release

    In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

    The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

J. Patten Brown, III, Esq.
December 17, 2019
Page 3

### Fine

Each offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment on or before the date of sentencing unless he establishes an inability to pay on or before the date of sentencing through the financial disclosure to the U.S. Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

### Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

### Forfeiture

The parties agree that forfeiture does not apply in this case.

### Supervised Release Violation in Earlier Case

The defendant will admit to violating a condition of his supervised release in *United States v. Roland Prejean*, No. 3:10CR206(KAD) that he not violate federal law because he engaged in the criminal conduct in the new case while on Court supervision. The Court may impose a sentence of imprisonment up to 24 months for the violation and he is not entitled to any credit for time previously served on post-release supervision. 18 U.S.C. § 3583(e)(3); U.S.S.G. §

J. Patten Brown, III, Esq.
December 17, 2019
Page 4

7B1.5(b). The Court may also impose an additional period of supervised release up to three years less any prison time imposed.

The Court may run any period of imprisonment for the supervised release violation concurrently with (at the same time), partially concurrently with, or consecutively to (after) the sentence for new offenses. 18 U.S.C. § 3584. According to the Sentencing Guidelines that are advisory, any term of imprisonment imposed upon the revocation of supervised release shall run consecutively to any sentence of imprisonment that the defendant is serving, whether or not the prison sentence being served resulted from the conduct that is the basis of the revocation of supervised release. U.S.S.G. § 7B1.3(f).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

J. Patten Brown, III, Esq.
December 17, 2019
Page 5

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release.  Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility.  The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement.  The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing.  The defendant understands that this stipulation is not binding on the Court.  The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

Because each of the offenses are Chapter Two, Part A offenses, the offense are specifically excluded from grouping under U.S.S.G. § 3D1.2.  *See* U.S.S.G. § 3D1.2(d).  The multiple counts are calculated as follows beginning with the offenses with the highest adjusted offense level:

Counts Two and Ten

The defendant's base offense level under U.S.S.G. § 2A6.1 for each of Counts Two and Ten is 12.  Four levels are added under § 2A6.1(b)(4) because the offense resulted in (A) substantial disruption of public, governmental, or business functions or services or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense. Six levels are added under § 3A1.2(b) because the Chapter Two guideline is from Chapter Two,

J. Patten Brown, III, Esq.
December 17, 2019
Page 6

Part A and because the victims were a government officer or employee (§ 3A1.2(a)(1)) and the offense of conviction was motivated by such status (§ 3A1.2(a)(2)), resulting in an adjusted offense level of 22 for each count.

### Counts One and Six

The defendant's base offense level under U.S.S.G. § 2A6.1 for each of Counts One and Six is 12. Four levels are added under § 2A6.1(b)(4) because the offense resulted in (A) substantial disruption of public, governmental, or business functions or services or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense. Two levels are added under § 3A1.1(b)(1) because the Chapter Two guideline is from Chapter Two, Part A and because the defendant knew or should have known that a victim of the offense was a vulnerable victim due to their physical or mental condition, resulting in an adjusted offense level of 18.

### Count Sixteen

The defendant's base offense level under U.S.S.G. § 2A6.1 for Count Sixteen is 12. Six levels are added under § 3A1.2(b) because the Chapter Two guideline is from Chapter Two, Part A and because the victim was a government officer or employee (§ 3A1.2(a)(1)) and the offense of conviction was motivated by such status (§ 3A1.2(a)(2)), resulting in an adjusted offense level of 18.

### Count Five

The defendant's base offense level under U.S.S.G. § 2A6.1 for Count Five is 12. Four levels are added under § 2A6.1(b)(4) because the offense resulted in (A) substantial disruption of public, governmental, or business functions or services or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, resulting in an adjusted offense level of 16.

### Count Thirteen

The defendant's base offense level under U.S.S.G. § 2A6.1 for Count Thirteen is 12. Three levels are added under § 3A1.1(a) because the defendant intentionally selected the victim and any property as the object of the offense of conviction because of the actual or perceived race or color, resulting in an adjusted offense level of 15.

Under the multiple count analysis of U.S.S.G. § 3D1.4, Counts One, Two, Six, Ten, and Sixteen each receive one unit because they are equally serious or one to four levels less serious to the offense with the highest adjusted offense level (Counts Two and Ten) of 22. Counts Five and Thirteen each receive a half of a unit because they are five to eight levels less serious than the offense with the highest adjusted offense level of 22. A total of six units results in an

J. Patten Brown, III, Esq.
December 17, 2019
Page 7

additional five levels being added to the highest of the adjusted offense level of 22, resulting in a combined adjusted offense level of 27.

Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 24.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category IV. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 24, assuming a Criminal History Category IV, would result in a range of 77 to 96 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of two years to three years. U.S.S.G. § 5D1.2.

As for the defendant's supervised release violation in *United States v. Roland Prejean*, No. 3:10CR206(KAD), as explained above, he committed the offenses charged in the Indictment while under supervision. Under U.S.S.G. § 7B1.1, the threatening conduct is a Grade A violation. The defendant's Criminal History Category at the time of his first case was IV. Therefore, the applicable Guideline range is 24 months, the bottom of the 24- to 30-month range because the statutorily authorized maximum term is two years. U.S.S.G. §§ 7B1.4(a) and 7B1.4(b).

With respect to the advisory Guidelines ranges for both the substantive offenses and the supervised release violation, the defendant reserve his rights to seek a downward departure or a lower non-Guidelines sentence. The Government does not intend to seek an upward departure or non-Guideline sentence greater than 120 months, the top of the combined applicable Guideline range for the new offenses and the supervised release violation.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

J. Patten Brown, III, Esq.
December 17, 2019
Page 8

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

J. Patten Brown, III, Esq.
December 17, 2019
Page 9

### Waiver of Violation of Supervised Release Hearing

The defendant understands that he is entitled to a revocation of supervised release hearing within a reasonable time in the district having jurisdiction, including written notice of the alleged violation; disclosure of the evidence against him; an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; notice of the his right to retain counsel or to request counsel be appointed if the defendant cannot obtain counsel; and an opportunity to make a statement and present any information in mitigation. The defendant understands that by admitting the violation of the conditions of his supervised release, he waives those rights and that, if the admission is accepted by the Court, his supervised release may be revoked without a hearing of any kind. 18 U.S.C. § 3583(e).

### Waiver of Right to Challenge Conviction and Finding of Supervised Release Violation

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction in the new case and a finding that he violated his supervised release in one or more ways.  By pleading guilty and admitting he violated his supervision, the defendant waives his right to appeal or collaterally attack his conviction and violation(s) of supervision in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241.  In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence for the new offenses and for his violation(s) of supervised release.  In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 101 months of imprisonment, a three-year term of supervised release, a $20,000 fine if the Court finds he is financially capable to pay it, and a $700 special assessment, even if the Court imposes such a sentence based on an analysis different from that specified above.  Similarly, the Government will not appeal a combined sentence of 120 months or greater for new offenses and supervised release violation(s).

This waiver does not reflect any position by the Government as to what an appropriate sentence should be in this case.

The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment for the new offenses is imposed to run consecutively to or concurrently

J. Patten Brown, III, Esq.
December 17, 2019
Page 10

with, in whole or in part, the penalties imposed for the defendant's violation of supervised release in Criminal No. 3:10CR206(KAD) or the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty and admitting a violation freely and voluntarily because he is guilty and he violated his supervision. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty and the violations(s) of supervision, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to

J. Patten Brown, III, Esq.
December 17, 2019
Page 11

serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his threatening conduct, which forms the basis of the Indictment in this case. After sentencing, the Government will move to dismiss the remaining Counts (Three, Four, Seven to Nine, Eleven, Twelve, Fourteen, and Fifteen) of the Indictment because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

## PLACE OF CONFINEMENT

The defendant will request that the Court recommend to the Bureau of Prisons that he serve his prison sentence at a medical facility suitable to addressing his mental and physical health problems. The Government will join in this request and will assist in ensuring that the defendant's medical records are timely provided to the Bureau of Prisons so it may consider them in determining the facility where he will serve his prison sentence. The defendant understands the Court is not obligated to make this recommendation and even if it does, the Bureau of Prisons is not obligated to follow the recommendation.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

J. Patten Brown, III, Esq.
December 17, 2019
Page 12

This letter shall be presented to the Court, in open court, and filed in this case.

        Very truly yours,

        JOHN H. DURHAM
        UNITED STATES ATTORNEY


        _____
        PETER S. JONGBLOED
        ASSISTANT UNITED STATES ATTORNEY


The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____      1/6/ 2020
GARY JOSEPH GRAVELLE      Date
The Defendant


I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____      1/6/ 2020
J. PATTEN BROWN, III, ESQ.      Date
Attorney for the Defendant

J. Patten Brown, III, Esq.
December 17, 2019
Page 13

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the Indictment and violation of his supervised release:

1. On January 10, 2013, the defendant pleaded guilty to a five-count indictment in Connecticut charging him with one count of making threats, through the use of the mail, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building by means of an explosive (18 U.S.C. § 844(e)) and four counts of mailing threatening communications (18 U.S.C. § 876(c)). *United States v. Roland* Prejean, No. 3:10CR206(WWE). On July 19, 2013, the Court sentenced him to 70 months in prison, followed by a three-year term of supervised release. On or about November 20, 2015, the defendant was released from prison and began serving his term of supervised release under the supervision of the United States Probation Office in Connecticut.

2. On September 4, 2018, the defendant had approximately two months remaining before he completed his three-year supervised release term. According to the Probation Office, he was working well with his supervising Officer and overall complying with the terms of his supervision, including receiving mental health treatment. On September 4 and 5, 2018, the defendant through the use of the U.S. mail, electronic mail, and telephone, threatened to kill, injure, and intimidate people and explode property in Connecticut and elsewhere. Those threatened include federal judges, federal probation officers, social workers, treatment facilities, a federal prison, a federal credit union, an airport, religious institutions, non-profit and service organizations, and the current President of the United States.

3. On September 4, 2018 at 6:54 p.m., the defendant sent a threatening email to the Program Manager of the Fellowship House, located at 441 Elm Street in New Haven, Connecticut. He sent the message from a return email address: "americanknightsofanarchy@gmail.com," an account he had set up using the name Theodore Cowell, which was serial killer Ted Bundy's real name. The email contains threatening language, including the following: "Are u ready to die? There's a high yield explosive device hidden in the Crest building. Outside, waiting, are 4 AKA assassins carrying AK 47s. You are all gonna die…" After reading the email, the Program Manager immediately called the New Haven Police Department and notified her supervisor. The email caused major alarm and upset. The Fellowship House building was evacuated, displacing approximately 4-5 staff members and 12 patients who were receiving care and treatment, and funds were expended to respond to the offense. (Count One).

4. On September 4, 2018 at 8:00 p.m., the defendant sent a threatening email to a Supervising U.S. Probation Officer the defendant knew from being supervised by the U.S. Probation Office. The sender used the name Muhammad Farakahn with an email address allahalakamsalaambinlade@gmail.com. The email contains threatening and offensive language concerning a Supervising Probation Officer and the Probation Officer supervising him. The

J. Patten Brown, III, Esq.
December 17, 2019
Page 14

email includes the following: "We are coming for all you fed scum!!! We are the American Knights of Anarchy. There are high yield C4 explosive devices hidden in your Hartford building [referring to 450 Main Street, Hartford, Connecticut]. Remote detonator. PETN-based detonating cord. Bacillus anthracis…. M24s are scoping you now. We declare war on you." As a result, of this email together with a white powder letter the defendant sent to the U.S. Probation Office at 450 Main Street, Hartford, Connecticut, the office was shut down, evacuated, employees were subject to decontamination procedures, and funds were expended to clean up, decontaminate, or otherwise respond to the offense. (Count Two).

     5.  On September 4, 2018 at 11:35 p.m., the defendant sent a threatening email to the U.S. Bureau of Prisons email address SET/ExecAssistant@bop.gov from email address gravellejosephgary@gmail.com. The addressee is the Federal Detention Center SeaTac located at 2425 South 200th Street, Seattle, Washington. He wrote, "We are the American Knights of Anarchy. We declare war against the vile corrupt US government. We will murder any and all federal law enforcement when and where we find you scum. AKA assassins will murder BOP staff from 800meters using an M24 sniper rifle. We planted high yield c4 explosive devices in the Sea Tac offices. You will all die." As a result of the email, the prison followed its bomb threat protocol, including securing its perimeter, causing disruption to prisoners and the operation of prison, and funds were expended to respond to the offense. (Count Five)

     6.  On September 5, 2018 at 12:04 a.m., the defendant sent a threatening email to multiple recipients at Yale, including a treatment provider at Connecticut Mental Health Center, 34 Park Street, New Haven, Connecticut. The defendant received mental health treatment at the Connecticut Mental Health Center. The email was from email account garyjosephgravelle@gmail.com. He wrote: "We are the American Knights of Anarchy. We declare war against the vile corrupt Yale university. We will murder any and all Yale scum when and where we find you scum. AKA assassins will murder you from 800 meters using an M24 sniper rifle. We planted high yield c4 explosive devices in Yale offices. You will all die." The email ends, "I am Gary Joseph Gravelle. [XXXXX]2945. [XXXX]1967. I am the Commander of the AKA quick strike forces." The numbers are references to Gravel's Social Security number and date of birth. The email caused major alarm and upset. The building was evacuated, displacing staff members and patients who were receiving care and treatment, and funds were expended to respond to the offense. (Count Six).

     7.  On September 5, 2018, a letter containing an unknown white powder and threatening communication was delivered to U.S. District Court Judge Vanessa Bryant. The letter, postmarked September 4, 2018, was addressed to "Vanessa L. Bryant, U.S. District Judge, 450 Main Street, Hartford, CT 06103." The return address is "Bob Matthews, LCSW  882 Glacier Way, Southington, CT 06489." In the letter, the defendant wrote, "There are 6 high-yield explosive devices hidden at 450 Main St. in Harford, CT" and "We declare WAR on the United States District Court-Hartford, CT. You will all die for crimes against humanity and the A.K.A. Our assassins are very near you." The letter also contains a threat that Anthrax has been placed somewhere in the 450 Main Street building: "Anthrax is an acute infectious disease caused by the spore-forming bacterium Bacillus anthracis a category A agent." As a result of the letter, the

J. Patten Brown, III, Esq.
December 17, 2019
Page 15

Judge's chambers were evacuated and closed for at least three days, court personnel were subject to decontamination procedures, and funds were expended to clean up, decontaminate, or otherwise respond to the offense. (Count Ten).

    8. On September 6, 2018, the staff at the NAACP office in New Haven received a white powder letter from the defendant. The letter, dated September 2, 2018 and postmarked September 4, 2018, is addressed to "N.A.A.C.P. – New Haven, 545 Whalley Ave., New Haven, CT 06511." The return address is "Ted Cowell, APRN, 21 Irving st., Bristol, CT 06010." The letter contains racially offensive language and threats of "WAR" by the American Knights of Anarchy on African Americans and other groups. Specifically, the letter provided "We declare WAR on all niggers, monkeys, spear-chuckers, toads, flat heads + mud people! We are hunting you, and we won't stop until all mud races are annihilated!" The letter also contains a description of a firearm and Anthrax: "The bolt-action 7.62 x 51 mm M24 is capable of 0.5 MOA accuracy + maximal effective range of 800 meters. **Anthrax **is an acute infectious disease caused by bacterium. Breathe Deep Bitch—And Die." The letter also contains the words "We Bleed You all die!" The letter has dark smears with a full handprint on it. (Count Thirteen).

    9. On or about September 4, 2018, the defendant mailed a threatening white powder letter to President Donald Trump. The letter, postmarked September 4, 2018, is addressed to "The Honorable Donald Trump, 1600 Pennsylvania Ave, NW, Washington, DC 20500." In the letter, the defendant states, "You Die," "Bacillus anthracis," and "I, Gary Gravelle, [XXXXX]2945, as a faithful soldier of the AKA, am coming to KILL Donald Trump ...." The number reference is to his Social Security number. The letter is signed "Love, Gary Gravelle" and has the number "10750-059," which is his U.S. Marshal Service prisoner number. The letter has dark smears like fingers on it. (Count Sixteen).

    10. Later on September 5, 2018, Deputy U.S. Marshals arrested Gravelle on a federal arrest warrant for violating the terms of his supervised release. The DUSMs took him to the New Britain Hospital for evaluation and he was discharged. DUSMS advised Gravelle of his Miranda Rights and he voluntarily waived them. He spoke with the DUSMs and provided the following: He admitted sending threatening emails and sending approximately 50 letters that had baking soda and his blood in them. He was suicidal, but did not have the guts to carry it out himself. He wanted to commit suicide at his parents' grave. He hates himself. He wanted to go back to prison so he could die in prison. His intentions were to commit so many crimes that he would not get out of prison. Gravelle explained that he does not like to be around people and the apartment complex in which he was residing housed so many people who were always hanging around. When sending the letters he used various aliases as well as his name as the return sender. He knows what he did was wrong and knew he would get caught. He handwrote all of the letters and his fingerprints are all over them. Most of the letters had the return address of 21 Irving Street, Bristol, CT. The list included U.S. District Judge Vanessa L. Bryant, Hartford, the US Probation Office, the NAACP in Connecticut, and the President of the United States. He further explained that he had mailed some of the letters on August 31, 2018 from a U.S. Post Office mailbox in New Haven and more letters on September 4, 2018 from a U.S. Post Office mailbox in Southington, Connecticut. Gravelle said that on the evening of September 4, 2018 he

J. Patten Brown, III, Esq.
December 17, 2019
Page 16

made a threatening telephone call to U.S. District Judge Bryant's office line containing bad stuff about killing her and made a threatening telephone call to a treatment provider at Connecticut Mental Health Center. He further said he sent e-mails to a large number of people, including: a U.S. Probation Officer, CREST Program [Fellowship House] located at Elm Street, New Haven, a treatment provider at Connecticut Mental Health Center.

    This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

GARY JOSEPH GRAVELLE
The Defendant

PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY

J. PATTEN BROWN, III, ESQ.
Attorney for the Defendant