UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | * | DOCKET NO. 19CR126 (KAD) |
| v. | * | |
| GARY GRAVELLE | * | SEPTEMBER 29TH, 2020 |

SENTENCING MEMORANDUM AND POSITION PAPER WITH RESPECT TO SENTENCING FACTORS

Undersigned Counsel hereby submits the following Sentencing Memorandum and Position Paper with respect to Sentencing factors:

1.

Mr. Gravelle is scheduled for sentencing on October 13th, 2020.

2.

Mr. Gravelle and counsel have reviewed the PSR together.

OBJECTIONS TO THE PSR

3.

As to the facts:

a. None.

4.

As to the Advisory Guideline Range calculations:

a. ¶132: We join the Government's objections as outlined in the Addendum to the PSR. We submit the Advisory Guideline Range should be 77-96 months. Even if the Court and/or Probation should disagree, the Court should apply a "Fernandez" departure and use an Advisory Guideline Range of 77-96 months as a starting point.

LAW AND ARGUMENT & REQUEST FOR A VARIANCE

5.

Mr. Gravelle has been in almost this identical situation before.  Though many of the victims may be different, it is the exact same Modus Operandi causing the disruptions outlined in the charges and PSR with no intent to follow through or seeming ability to do so.  The victims varied from government officials he knows and does not know, media members and public interest groups and organization with no seeming pattern as far ideology, race or creed.  He has no agenda other than a misguided cry for help.  As in his prior federal prosecution; once his "spree" concluded he consented to all searches and interviews and apologetically confessed.

6.

Mr. Gravelle is a sick man.  More on that below, but I think it is not a disputed fact as far as the Government, probation or the Court.  It is backed up by records from his prior federal conviction and in this case from his lengthy hospitalization for a mental health evaluation at FMC Devens. I assume the Court is familiar with the details of said report so I will refrain from discussing them in detail in this public document.  It is, however, also relevant as to the enhancement called for in USSG §3A1.2(b).

7.

I will state at the outset that I agree that the enhancement called for in USSG §3A1.2(b) fits this case.  I take no issue with the position of the Government and Probation in this regard.  It is an enhancement that is plainly written and applicable.  My issue with it is its neutrality as it applies to Mr. Gravelle which result in an overstatement of the seriousness of his offense.  I say this for two reasons, one more relevant than the

other.  Of some relevance is the fact Mr. Gravelle had no intent and little ability to carry out the totality of his threats.  The greater reason this enhancement overstates the seriousness of his offense is his mixed motivation.  One motivation was their official status which, in a vacuum, calls for the six-level enhancement.  The other was his cry of help and panic induced by his mental health disabilities.  His disabilities are clearly outlined in ¶¶121-127 of the PSR.  Mr. Gravelle has been treated for serious psychiatric conditions in both state and federal custody.

8.

This enhancement calls for a six-level upward adjustment no matter the nature, motivation or seriousness of the offense.  It applies to someone who was going to blow up an Internal Revenue Service building.  See *United States v. Polk*, 118 F.3d 286, 297-98 (5th Cir. 1997).  It also applies for a physical assault of a police officer and trying to kill an FBI agent.  See *United States v. Hooker*, 997 F.2d 67, 75-76 (5th Cir. 1993); *United States v. Talley*, 164 F.3d 989, 1004 (6th Cir. 1999). There are circumstances where only a three-level adjustment would apply, but in this case, it is six as the victim was a government agent and my client admittedly felt he was more likely to get help if the person was a government agent.  But in this case, due to the unique circumstances of Mr. Gravelle's situation, a variance is justified which I will discuss further in my conclusory remarks.

9.

We obviously do not feel any upward variance, if requested, is warranted as there are several additional factors justifying a downward variance I will discuss below

10.

Mr. Gravelle's offense was committed when he was bout to be released from the supervision of the court. His irrational fear was his prime motivation in committing these crimes. He has suffered from these mental health conditions for most of his life and the tragedy that is our systems way of dealing with the chronically mentally ill has him trapped in this never-ending cycle. Mr. Gravelle needs a hospital, even one with strict restrictions on his liberty, and not a jail.

11.

The last time he was convicted, Mr. Gravelle, Judge Egdington and even the government, in spite of our contentious disagreement about the guidelines during that case, were all on board with a recommendation Mr. Gravelle spend his time in custody at one of the FMC's run by the Bureau of Prisons. I submit the record back then, and now, supported such a result. In spite of my comments about the failure of the federal and state criminal justice systems to deal with the chronically mentally ill, I do think the Bureau of Prisons can be a positive for Mr. Gravelle if, and only if, he is sent to an FMC.

12.

However, that did not occur during his last incarceration. I cannot help but think that such a failure to provide for the rehabilitative and health needs of Mr. Gravelle may have contributed to these crimes. I am hopeful it will make a difference as far as placement in this case. The Government has made inquiries to try to educate the BOP about my client's needs and I am asking the court to recommend in the strongest terms possible his placement in an FMC for his well-documented mental health conditions. I will be asking the court to sentence him with the assumption this will be done, as it

should be done.  U.S.S.G. § 5H1.3 provides that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." See 18 USCS Appx § 5H1.3.  "A defendant has significantly reduced mental capacity when defendant has a significantly impaired ability to control behavior that the defendant knows is wrongful." U.S. Sentencing Guidelines Manual § 5K2.13, cmt., application n. 1 (2003).  In circumstances similar but not identical to this case, a sentencing departure under this section should be considered.

> "Appellant's telephone call was a "non-violent crime." After his arrest, appellant was examined by government physicians, who concluded that he was suffering from severe mental illness, including paranoid delusions, in August of 1988. He had no significant criminal history. The sentencing judge refused to consider a downward departure under that provision, stating "I do not believe I have authority to depart downward. I think that the factors set out by the defendant have already been considered by the Sentencing Commission in formulating the Guidelines. In that respect, I do not believe I can depart downward."
>
> We are satisfied that the sentencing court did have the authority to grant a downward departure because of appellant's mental condition. We do not decide, of course, whether appellant should have been granted a downward departure; we hold merely that he was entitled to have the sentencing court consider the issue, and exercise its discretionary authority."

<u>United States v. Philibert</u>, 947 F.2d 1467, 1471-72 (11th Cir. 1991)

The cited case is not identical as the defendant in that case had no criminal history and there was only one victim but the principal is the same. But due to those differences I am not asking for as large of a variance or departure as I would as no serious person can argue Mr. Gravelle should not receive a serious sentence for these crimes.

13.

When fashioning a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a)(2) provides that the District Court should consider the applicable Guidelines Range and any pertinent policy statements; see § 3553(a)(4)-(5); as well as the following factors:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed --

    (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the Defendant; and(d) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available; and

4. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See 18 U.S.C. § 3553(a)(2).

14.

Moreover, when considering Mr. Gravelle's sentence, this Court should also consider that after Booker, a district court's sentence must be determined in light of the factors set forth in 18 U.S.C. § 3553(a) which specifically include the "need to avoid unwarranted sentencing disparities." See 28 U.S.C. Sec. 991(b)(1)(B). In United States v. Daas, 198 F.3d 1167 (9th Cir. 1999), the Ninth Circuit noted that a central goal of the Sentencing Guidelines is to eliminate sentencing disparity. Citing Koon v. United States, 518 U.S. 81 (1996)) ("The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the even handedness and neutrality that are the distinguishing marks of any principled system of justice."); see also United States v. Ray, 920 F.2d 562 (9th Cir. 1990) ("disparity was said to be one of the most important evils the Guidelines were intended to cure").

15.

Mr. Gravelle, as detailed above, is a troubled man with a substantial history of severe mental illness.  Mr. Gravelle has often discussed with me, the government and it's agents during as voluntary statement in the presence of counsel, the court and mental health professionals that his primary motivation is obtaining help for his mental health conditions and his remorse for these actions.  He wants treatment and has a genuine desire to do better.  This history of mental illness is well document and factual. No reliance on the fact that he was declared competent for prosecution or a report evidencing some possible malingering in a mental health evaluation can negate these undeniable facts.  He has been diagnosed, among other things, as bipolar, Antisocial personality disorder and is on multiple psychotropic medications.  He has also spent a substantial

portion of his live since adolescence at CVH and Whiting, mental health hospitals run by the state of Connecticut.

16.

Neither I or Mr. Gravelle dispute that this is a serious offense. The public does not want their public officials with the threatened in this manner. However, justice must be tempered with mercy or it can become unjust. Society cannot fail to provide mental health treatment to people like Mr. Gravelle and then be surprised at the result. His prior incarceration, which for some reason did not get him the treatment he needed, is but one example. This failure, and his disability, does not justify a more severe incremental sentence as would normally be the case; or I submit even a guideline sentence.

17.

Mr. Gravelle's guideline range is, in my view, 77-96 months with the added companion case of his supervised release violation recommending an additional 24 months at the low end. In my view, this would account for Mr. Gravelle's mental health conditions and diminished capacity. I am asking the court to run that sentence concurrent to his sentence for this case. Based upon the above arguments about the 6-level adjustment for government official(s) as victims being an overstatement as applied to Mr. Gravelle, but still recognizing the fact he did meet the criteria, I asking for a two-level downward adjustment as a far compromise between the 3 and 6 level adjustments allowed by this provision. I am therefore asking for a sentence of 63 months, which would be the low end of an Offense Level two levels lower. This, I submit, is a but no longer than necessary sentence. I am also asking for the strongest recommendation your honor can give that he be placed at a Federal Medical Facility that is capable of providing

psychiatric care. Additionally, a substantial term of supervised release is warranted with a condition that he receive mental health treatment and take all prescribed medications. It is well established that therapeutic mental health court programs designed to treat mental disorders as an alternative to longer prison sentences reduce recidivism rates. See Dale E. McNeil, Ph.D. and Renee L. Binder, M.D. Effectiveness of a Mental Health Court in Reducing Criminal Recidivism and Violence, 16 Am. J. Psychiatry 1395-1403 (Sept., 2007); Ohio Office of Criminal Justice Services, Research Briefing 7: Recidivism of Successful Mental Health Court Participants (April 2007). I submit that, in light of my client's mental health history and taking into account the need to protect the public, that this is a reasonable request that significantly punishes my client and also takes into account his limitations and need for rehabilitation. As he is indigent and I have been appointed I request the Court not impose a fine.

                                                        RESPECTFULLY SUBMITTED,

***S/J. Patten Brown, III***
J. PATTEN BROWN, III
Law Offices of Pat Brown
43 West Main Street
Avon, CT 06001
Phone: (860) 878-4311
Fax: (860) 404-2568
jpb@patbrownlaw.com
Ct Fed Bar No. ct27633
TN BPR No. 021970
La. Bar Roll No. 21503
New York Reg No. 4607891

## CERTIFICATE OF SERVICE

      I hereby certify that this SENTENCING MEMORANDUM by Mr. J. Patten Brown, III, counsel of record, and Mr. Roland Prejean was forwarded electronically via the Court's electronic filing system to all counsel of record this 29th day of September, 2020, or via U.S. Mail to the listed address of record to all counsel in the above captioned matter.

                            ***S/J. Patten Brown, III***
                            J. Patten Brown, III, Esq.